Susan Martin (AZ #014226)
Daniel Bonnett (AZ #014127)
Jennifer Kroll (AZ #019859)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
*Additional counsel listed on signature page*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Caballero, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HealthTech Resources, Inc.,<br><br>Defendant. | Case No.: 2:17-CV-02321-SPL<br><br>**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS AND MEMORANDUM IN SUPPORT** |

Plaintiff Jessica Caballero ("Plaintiff") on behalf of herself and a collective of others similarly situated, together with Defendant HealthTech Resources, Inc. ("Defendant or HealthTech") (together, the "Parties"), by and through undersigned counsel, hereby respectfully request that this Court issue an order approving the Parties' Settlement Agreement (attached as **Exhibit 1**), and approving the Settlement Agreement's proposed service payment to Plaintiff Caballero and award of attorneys' fees and costs to Plaintiff's Counsel. In support of this Motion, the Parties state as follows:

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff filed a class and collective action in the United States District Court for the Western District of Pennsylvania on February 20, 2017, alleging that HealthTech classified

its Consultants as exempt employees and illegally denied them proper overtime compensation when they worked more than 40 hours per week in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.* ("PMWA"). (Doc. 1.) Plaintiff's FLSA claim was brought on behalf of an opt-in collective, and her Pennsylvania state law claims were brought on behalf of Consultants who worked in the state of Pennsylvania.

HealthTech provides electronic recordkeeping implementation and training services for the healthcare industry across the country. In order to perform these services, HealthTech uses so-called "Consultants", including Plaintiff and the Opt-In Plaintiffs. Plaintiff and the Opt-In Plaintiffs worked as Consultants for HealthTech providing support and training services to doctors and nurses in learning how to use electronic recordkeeping systems. Plaintiff alleges that she and the Consultants were paid an hourly rate for all hours worked; they often worked 12-hour shifts, seven days a week; and they did not receive time-and-a-half for hours worked in excess of 40 a week.

HealthTech moved to dismiss or transfer Plaintiff's Complaint, arguing that due to the forum selection clause in Plaintiff's contract, the case should be dismissed or transferred to Arizona. (Doc. 14.) On April 27, 2017, Plaintiff filed a First Amended Complaint. (Doc. 22.) On May 11, 2017, HealthTech filed a renewed Motion to Dismiss, and on July 7, 2017, the action was transferred to the District of Arizona. (Doc. 32.)

Once the case arrived in Arizona, HealthTech filed an Answer to Plaintiff's Complaint (Doc. 46), and a Motion to Dismiss Plaintiff's Complaint, arguing that 1) Plaintiff's FLSA claim should be dismissed because it is barred by the statute of limitations; 2) Plaintiff's FLSA claim should be dismissed because Defendant properly classified her and other Consultants as exempt under the FLSA's Computer Employee exemption; and 3) Plaintiff's Pennsylvania state law claims under the PMWA should be dismissed based on the choice of law provision in her contract. (Doc. 45.)

This Court issued a Scheduling Order on August 27, 2017 (Doc. 52). Plaintiff opposed HealthTech's Motion to Dismiss, and on September 8, 2017 filed a Motion for

Conditional Collective Action Certification and Court-Supervised Notice Pursuant to 29 U.S.C. § 216(b) (Doc. 55), which this Court granted on February 20, 2018. (Doc. 68.)

On February 20, 2018, this Court issued an order denying in part and granting in part HealthTech's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 67). The Court rejected HealthTech's first two arguments (*i.e.*, 1) that Plaintiff's FLSA claim should be dismissed because it is barred by the statute of limitations; and 1) Plaintiff's FLSA claim should be dismissed because Defendant properly classified her and other Consultants as exempt under the FLSA's Computer Employee exemption). But, the Court dismissed Plaintiff's PMWA claim, holding that the choice of law provision in Defendant's contract was effective, because one of the two exceptions under Restatement (Second) on Conflict of Laws ("Restatement") § 187(2) was satisfied. MTD Order at 8-9. Plaintiff timely filed a Motion for Reconsideration. (Doc. 69.) HealthTech opposed Plaintiff's' Motion on May 4, 2018. (Doc. 72.) Following the Parties notifying the Court of their intent to engage in ADR, the Court dismissed Plaintiff's Motion for Reconsideration without prejudice and with leave to refile. (Doc. 74.)

Also on February 20, 2018, the Court granted Plaintiff's Notice Motion. (Doc. 68.) Pursuant to the Court's Order, notice of the action was sent to the three (3) potential members of the conditionally certified FLSA Collective who had timely claims. The Notice period closed on June 12, 2018. There are currently five (5) Opt-In Plaintiffs involved in this action in addition to Plaintiff (the "Settlement Collective Members").

The Parties then agreed to a framework for exploring settlement through an alternative dispute resolution ("ADR") process, including an in-person mediation before an experienced mediator, Honorable Christopher M. Skelly, in Phoenix, Arizona, on August 9, 2018. The Parties were able to reach a settlement in principal at the mediation and soon thereafter executed a Settlement Agreement.

Plaintiff and Plaintiff's Counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in this case. *See* **Exhibit 2**, Declaration of Sarah R. Schalman-Bergen ("Bergen Decl.") ¶¶ 22; 37-42. Based upon their

analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that this lawsuit, if not settled now, might result in a recovery that is less favorable to the Collective Members, and that would not occur for several years, or at all, Plaintiff's Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that the terms and conditions of the Settlement Agreement is in the best interests of the Collective Members. *Id.* ¶¶ 15-18; **Exhibit 3**, Declaration of Daniel L. Bonnett ("Bonnett Decl.") ¶ 10; **Exhibit 4**, Declaration of Harold Lichten ("Lichten Decl.") ¶ 4.

Defendant denied and continues to deny all of Plaintiff's allegations in this case. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle this case on the terms and conditions set forth in the Settlement Agreement (Ex. 1) solely to avoid the burden, expense and uncertainty of continued litigation.

The material terms of the Parties' Settlement Agreement include the following:

1. Defendant will pay a Gross Settlement Fund of Eighty-Four Thousand Three Hundred and Seventy-Nine Dollars and Fifty Cents Dollars ($84,379.50).

2. The Gross Settlement Fund will cover:

    a. The settlement allocations to all six (6) Collective Members in the amount of Twenty Six Thousand Eight Hundred and Seventy Nine Dollars and Fifty Cents ($26,879.50) (the "Settlement Award Amount");

    b. Attorneys' Fees and Costs in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00) (*i.e.*, $5,204.21 in costs, and $49,795.79 in fees), which equals approximately 34.4% of the actual fees incurred by Plaintiff's Counsel as of September 13, 2018; and

    c. A Service Award in the amount of Two Thousand Five Hundred Dollars and Zero Cents ($2,500) to Plaintiff Caballero.

3. Each Collective Member will receive Notice of the Settlement (in the form attached as **Exhibit A** to the Settlement Agreement) and a check for their

|   |   |
|---|---|
| 1 | individual pro rata share of the Settlement Award Amount. The award amounts will be calculated based the number of hours over forty hours in a workweek that each Settlement Collective Member worked for HealthTech in Pennsylvania between three years prior to when the Settlement Collective Members' Opt-In Consent Form was filed on the docket and August 8, 2018. The Settlement Award Amount equal approximately 183% of the actual overtime damages owed to the Settlement Collective Members based on the data provided by HealthTech. |

4. Collective Members who choose to cash their settlement checks and participate in this Settlement will release all their respective federal and state unpaid overtime claims that were or could have been alleged in this lawsuit for unpaid overtime work during alleged off-the-clock work. Collective Members who do not wish to accept these terms can simply not cash their checks (or return them) and retain all their rights to pursue their claims individually.

5. Any uncashed settlement funds that remain after the 180 day cash-checking deadline will be donated to the parties' agreed upon *cy pres* recipient, Community Legal Services (Phoenix), subject to the Court's approval.

## II. ARGUMENT.

### A. <u>This Court Should Approve The Parties' Settlement.</u>

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel, and there are no absent class members whose claims are being settled. *See* 29 U.S.C. § 216 (b); *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989); *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006). Thus, the typical reasons for judicial scrutiny of class action settlements are not present in FLSA opt-in settlements, because absent class members are not bound by the case's outcome. *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D.

23 (M.D.N.C. 1977). Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. In fact, most districts in the Ninth Circuit evaluate a proposed FLSA Settlement under the standard established in *Lynn's Feed Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires that the settlement constitute a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *See Acuna v. So. Nev. T.B.A. Supply Co.,* 324 F.R.D. 367, 379 (D. Nev. 2019); *Millan v. Cascade Water Services, Inc.*, 310 F.R.D 593, 607 (E.D. Cal. 2015) (FLSA settlement approval requirements are less stringent than Rule 23 classes because individuals that do not opt-in are not bound by the settlement terms); *Gonzalez-Rodriguez v. Mariana's Enterprises,* No. 2:15-cv-00152, 2016 WL 3869870, at *3 n. 1 (D. Nev. July 14, 2016).

Nonetheless, courts have held that settlement of claims brought under the FLSA, in order to effectuate a release, must be presented to the district court for its review and a determination whether the settlement is fair and reasonable. *See Juvera v. Salcido*, 2013 WL 6628039, at * 3 (D. Ariz. Dec. 17, 2013) (citation omitted). For the Court to approve a FLSA settlement, "the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. And the settlement agreement must contain an award of reasonable attorneys' fees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Lynn's Food Stores,* 679 F.2d at 1352-54. First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* at 1353. Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id*. If the proposed settlement reflects a

reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Based upon the contested nature of this case and the quality of the settlement, Plaintiff respectfully submits that this Court should conclude that the parties' settlement is a reasonable arms-length resolution of a *bona fide* dispute in contested litigation, and thus approve the settlement.

### 1. The Proposed Settlement Is The Product Of Contested Litigation.

There is no question that the proposed settlement is the product of contested litigation. *See* Docket Sheet, generally. In her Complaints and motions, Plaintiff made detailed, factual allegations describing Defendant's allegedly unlawful compensation practices. Defendant filed Answers, Motions to Dismiss, and an Opposition to Plaintiff's Notice Motion denying all of Plaintiff's material factual allegations, and asserting an array of affirmative defenses that it argued would bar Plaintiff's claims in whole or in part. *See* Schalman-Bergen Decl. ¶¶ 5-6.

As explained above, the parties conducted extensive factual investigations regarding the issues raised in Plaintiff's Complaint and the pleadings on file. Plaintiff's Counsel conducted formal written discovery; interviewed numerous Consultants; compared their findings; reviewed voluminous documents; and analyzed pay and time records. *Id.* ¶¶ 12; 22; 37-40. Similarly, Defendant analyzed its records and interviewed its own witnesses to evaluate the veracity of Plaintiff's allegations. The parties also undertook considerable legal analysis of the various issues implicated in this case, including fully analyzing the issues pertaining to FLSA collective action and a possible Rule 23 class for the state wage law claims, whether this matter would survive a challenge to a decertification motion (e.g., the individual analysis required for each opt-in plaintiff's activities while employed), and the potential damages at issue in this case. Schalman-Bergen Decl. ¶¶ 17-18.

The settlement of this lawsuit occurred following a hard-fought, all day mediation, which was ultimately successful. Before the settlement, the Parties had a full opportunity to analyze the pertinent factual and legal issues, and assess the strengths and weaknesses of

the claims and defenses at issue. Accordingly, this Court should readily conclude that the proposed settlement was the product of contested litigation.

### 2. The Settlement Fairly and Reasonably Resolves A Bona Fide Dispute.

This settlement is the product of arm's-length negotiations by experienced counsel and provides meaningful, significant, monetary relief to Plaintiff and all Collective Members who chose to participate. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The litigation was hard fought and settled only after Plaintiff received opt-in paperwork from putative collective members; engaged in extensive motion practice; obtained and scrutinized formal discovery and pay and time records; and participated in a day long mediation. Schalman-Bergen Decl. ¶¶ 6-12.

Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt. Plaintiff claimed that Defendants unlawfully paid Plaintiff and the Settlement Collective on a straight hourly basis for all hours worked and thus failed to pay employees all overtime compensation due under the FLSA and Pennsylvania law. Defendant claimed that, among other things, it complied at all times with the FLSA, and that any violations of the FLSA were not willful, and as such, the third year of damages would not be available, which would potentially eliminate any recovery to Plaintiff and the Collective given that all work at issue in this case was performed during the third year of the FLSA statute of limitations. The Parties also disputed whether collective action certification could be maintained, and whether the Court would reinstate the Rule 23 claims. Schalman-Bergen Decl. ¶¶ 17-18. Therefore, both substantive and procedural disputes created obstacles in the litigation.

The settlement offers significant payments to Plaintiff and participating Collective Members now. Collective Members who choose to cash their settlement checks will receive significant repayment for the alleged overtime damages. The equitable formula for distribution of the Settlement Award Amount is set forth in the Settlement Agreement and is based upon a formula that takes into account each Collective Member's hours worked and, <u>it provides a payment of approximately *183%* of actual damages owed</u> (*i.e.*, repayment of 100% of the overtime hours worked based on a three-year statute of limitations, as well as an additional 83% of these amounts as a liquidated damage component for alleged penalties which would have been assessed if Defendant were found to have willfully violated the FLSA). This amount is substantial. *Id.* ¶¶ 20-22.

This is significant and meaningful relief warranting approval of the settlement. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and ensuing appeals. In addition, the settlement accounts for the risk that such recovery may not occur at all after trial and/or any appeal. For these reasons, settlement approval now is highly favored. *See, e.g., In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation).

Notably, Plaintiff and Plaintiff's Counsel negotiated an agreement that does not result in any release of claims for any Collective Member unless (s)he specifically chooses to accept the terms of the Settlement Agreement and cash the settlement check. Schalman-Bergen Decl. ¶ 25. This choice to participate or not and the scope of the release are explained in detail in the notice of settlement each Collective Member will receive with his or her check. (Settlement Agreement, at Ex. A). Any amounts remaining will be donated to

the Parties' agreed upon *cy pres* recipient, Community Legal Services (Phoenix), subject to Court approval.[1]

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage, and approve the settlement.

### B. This Court Should Approve the Requested Service Award.

The Parties' Settlement Agreement provides for a service payment of $2,500 for Plaintiff Caballero, who provided invaluable service to Plaintiff's Counsel and, ultimately, the Collective Members. Plaintiff worked with Plaintiff's Counsel for over eighteen months, before and throughout this litigation, to pursue these claims on behalf of Collective Members. She assisted Counsel in the discovery process and to prepare for the mediation. Plaintiff also took the significant risk of coming forward to represent the interests of her fellow employees. Plaintiff risked her reputation in the community and in her field of employment in order to participate in this case on behalf of the Collective Members. Without Plaintiff stepping forward to put her name on the lawsuit and her assistance over the course of the litigation, it is unlikely that any recovery would have been as beneficial to the group. Schalman-Bergen Decl. ¶ 28.

The $2,500 service award Plaintiff seeks is consistent with the service awards approved in this Circuit. *See Rodriquez v. Danell Custom Harvesting, LLC,* 293 F.Supp.3d 1117, 1134 (E.D. Ca. 2018) (approving $3,500 for class representative for 10 months of litigation); *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500); *Wolph v. Acer America Corporation*, No. C 09-

---

[1] Community Legal Services (Phoenix) is a nonprofit legal organization that is "dedicated to providing legal assistance, advice or representation; self-help materials and legal education so people can know their rights. [It] focuses on helping survivors of domestic violence; assisting victims of consumer fraud and abuse; protecting tenants from unlawful/unfair practices by landlords; foreclosures; legal problems affecting agricultural workers, wage claims and other employment matters; and federal and state programs affecting peoples' health and economic stability." *See* About Us, http://clsaz.org/about.html (last visited September 12, 2108).

01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (awarding incentive award to $2,000); *Rigo v. Kason Industries, Inc.*, No. 11-cv-64-MMA(DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500 incentive award for more than two years of service well within the acceptable range); *Vinh Nguyen v. Radient Pharmaceuticals Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) (approving $2,000 for class representatives). Accordingly, this Court should approve the modest service payment requested in this case as a reward for Plaintiff's contributions to the case and to the Collective recovery as a whole.

### C. The Attorneys' Fees and Expenses Requested Are Reasonable and Warrant This Court's Approval.

The Fair Labor Standards Act ("FLSA") provides for the recovery of attorneys' fees and costs. 29 U.S.C. § 216(b). A statutory basis thereby exists if the FLSA claims had proceeded to trial and Plaintiff and the Collective had prevailed on the merits. In recognition of this possibility, the Settlement Agreement provides for a recovery of attorneys' fees in the amount of $$55,000.00 (*i.e.*, $5,204.21 in costs, and $49,795.79 in fees), based on the fee shifting provision of the FLSA. *See Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorney's fee.") (citing 29 U.S.C. § 216(b)); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983), disapproved of on other grounds by *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) (upholding a $100,000 attorneys' fees award for an FLSA wage recovery of $18,455); *see also Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 610-11 (7th Cir. 2014) ("Fee-shifting statutes […] are designed to prevent the potentially high costs of litigation from stifling justified claims."); *Hall v. Siemens VDO Auto. Elecs. Corp.*, 5:06-CV-1208-SLB, 2014 WL 1329553, at *10 (N.D. Ala. Mar. 31, 2014), *appeal dismissed* (June 30, 2014)("While reduced fee awards are proper in many cases, "[f]ee awards should not simply be proportionate to the results obtained," especially in FLSA cases, as fee awards in FLSA cases are often greater than the amount recovered

by the plaintiff."); *Ewald v. Royal Norwegian Embassy*, 11-CV-2116 SRN/SER, 2015 WL 1746375, at *16 (D. Minn. Apr. 13, 2015).

While a lodestar cross-check is not required under the fee shifting statute, if performed here, a lodestar cross-check confirms that the requested fee is reasonable and appropriate. At current hourly rates (even without adding any additional work through final judgment and claims administration oversight responsibilities), Plaintiff's Counsel's current actual fees are $144,769.74. Accordingly, the lodestar multiplier is .34 based on actual work performed. *See* Schalman-Bergen Decl. ¶¶ 29; 33-36. This is well below the range the Ninth Circuit has found appropriate. *See, e.g., Steiner v. American Broadcasting Co., Inc.* 2007 WL 2460326, at *2 (9th Cir. Aug. 29, 2007) (noting that lodestar multiplier of 6.85 "still falls well within the range of multipliers that courts have allowed"); *City of Roseville Employees' Ret. Sys. v. Micron Tech., Inc.*, 06-CV-85-WFD, 2011 WL 1882515 (D. Idaho Apr. 28, 2011) (lodestar multiplier of 2.72 " is relatively standard."); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of the settlement fund awarded, resulting in lodestar multiplier of 6.96).

The fees requested by Plaintiff's Counsel are also reasonable under the factors enumerated in local rule LRCiv 54.2(c)(3) for the reasons explained above, which are briefly summarized below[2]:

(A) <u>The time and labor required by counsel</u>: As set forth above and in the Schalman-Bergen Declaration, through the date of filing of this motion, Plaintiff's Counsel spent a combined total of over 283.6 hours ($144,769.74) working on this matter, including engaging in informal and formal discovery, engaging in extensive motion practice, reviewing thousands of pages of written and electronic discovery; working on damages calculations; drafting the mediation statement; preparing for and participating in a day-long

---

[2] Due to the amount of privileged information contained in Plaintiff's Counsel's actual hourly billing records, those detailed records are not attached here, but can be provided for this Court's *in camera* review should the Court wish to review them pursuant to LRCiv 54.2(c) & (d).

12

mediation; and assisting in the preparation, review and finalization of the settlement documents. This amount does not include the additional hours Plaintiff's Counsel anticipate they will spend before final settlement approval and in monitoring and confirming distribution of settlement payments to members of the Collective in accordance with the post-approval provisions of the Settlement Agreement. Schalman-Bergen Decl. ¶¶ 29; 33-36.

(B)  <u>Novelty and difficulty of the questions presented</u>: Certifying any collective to afford nationwide relief is a significant undertaking in terms of sophistication and risk. There are numerous disputed issues of fact and law, including, specifically, whether the Settlement Collective Members were properly classified exempt and whether they were entitled to overtime compensation. HealthTech denies all of the allegations made by Plaintiff and the other Collective Members, denies that it is liable or owes damages, and contends that final collective action treatment under the FLSA would be inappropriate if the Lawsuit were to be further litigated. Because HealthTech had potentially strong legal and factual defenses to Plaintiff's claims, even if Plaintiff were able to maintain certification in the action, an outcome of zero recovery for Plaintiff and for the other Collective Members remained possible. Plaintiff's Counsel accepted these risks, diligently prosecuted the case, and negotiated a meaningful and substantial recovery. Schalman-Bergen Decl. ¶¶ 14-18. Accordingly, this factor supports Plaintiff's Counsel's fee request.

(C)  <u>The skill requisite to perform the legal service properly</u>: Plaintiff's Counsel is one of a small number of plaintiffs' attorneys who have the experience, skill and knowledge of FLSA collective actions in applicable regulations and guidance who are willing to represent plaintiff employees on a contingency basis in this sort of wage and hour case. The wage and hour issues in this Lawsuit are governed by the highly technical federal FLSA law and regulations. Plaintiff's Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. *See generally* Schalman-Bergen Decl. ¶¶ 2-4,

Ex. A, BM Bio; Bonnett Decl. ¶¶ 3-5; Lichten Decl. ¶ 2. Plaintiff's Counsel thus had the requisite skill to perform the legal services required in this complex litigation.

    (D)   <u>The preclusion of other employment</u>: As set forth in the Declaration of Sarah R. Schalman-Bergen, in taking on this case on a contingency fee basis, Plaintiff's Counsel took extensive discovery, reviewed payroll and personnel documents, and, based on the data provided, generated a damages analysis consisting of various models representing different assumptions, without any guarantee of recovery of fees and costs for that time. Dedicating resources to this case meant less resources for other matters. Schalman-Bergen Decl. ¶ 43. Accordingly, this factor supports approval.

    (E)   <u>The customary fee charged in matters of the type involved</u>: As set forth herein, the fee shifting provision of the FLSA allows for recovery of Plaintiff's Counsel's fees and costs, and the lodestar crosscheck confirms the reasonableness of Plaintiff's Counsel's request as it is substantially below the aggregate amount of attorneys' fees using their usual and customary billing rates for cases of this type. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of the FLSA. Otherwise, highly-skilled counsel would shy away from risky and expensive litigation (like this case) and employees seeking to vindicate their rights would have difficulty obtaining qualified counsel. Schalman-Bergen Decl. ¶ 31.

    (F)   <u>Whether the fee contracted between the attorney and the client is fixed or contingent</u>: Plaintiff's Counsel took on this case on a contingency fee basis, absorbing the risk of an unfavorable outcome and the significant costs associated with litigating this case. And, in fact, Plaintiff's Counsel is taking a reduction on the fees and costs actually incurred in litigating this action. Schalman-Bergen Decl. ¶ 31. This factor likewise supports the requested fee award.

    (G)   <u>Any time limitations imposed by the client or the circumstances</u>: The Collective members are employees or former employees with limited means. When filed, it was contemplated that this case could take approximately two or three years to achieve a final result given the legal and factual issues in dispute. Taking this into consideration, the

favorable results achieved at this time through settlement and without trial and subsequent appeal are beneficial to members of the Collective. Schalman-Bergen Decl. ¶ 14.

(H) <u>The amount of money, or the value of the rights involved, and the results obtained</u>: Here, the Gross Settlement Amount represents a significant recovery for the Settlement Collective Members in light of some risks. For instance, HealthTech argues that the Settlement Collective Members were exempt from the overtime requirements of the FLSA. Moreover, each Settlement Award represents approximately ***183%*** of actual damages that would be owed to the Settlement Collective Members. Schalman-Bergen Decl. ¶ 21. The settlement is based on an analysis of overtime hours that the Settlement Collective Members worked for HealthTech during the relevant time period, as determined from HealthTech's records. *Id*. Each Settlement Collective Member will receive a Settlement Award. *Id.* ¶¶ 22-23. Only those Settlement Collective Members who deposit or cash their Settlement Award check will release their claims against HealthTech. *Id.* ¶ 25. In sum, the Settlement represents an excellent result given the circumstances of the Lawsuit and, thus, the amount involved and results obtained factor supports the proposed fee award.

(I) <u>The experience, reputation and ability of counsel</u>. As set forth in the attached declarations, Plaintiff's Counsel are experienced and knowledgeable FLSA attorneys and performed ably in achieving the Settlement. In litigating this case and preparing for mediation, Plaintiff's Counsel took extensive discovery, reviewed payroll and personnel documents, and, based on the data provided, generated a damages analysis consisting of various models representing different assumptions. Schalman-Bergen Decl. ¶¶ 2-4, Ex. A, BM Bio; Bonnett Decl. ¶¶ 3-5; Lichten Decl. ¶ 2. More generally, Plaintiff's Counsel possess particularized skill, experience, and ability to litigate these types of claims. *Id.*

(J) <u>The "undesirability" of the case</u>: Plaintiff's Counsel undertook significant risk in agreeing to represent Plaintiff. Large scale wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to

appropriately pursue them, as evidenced by this case. Schalman-Bergen Decl. ¶¶ 29; 33-36; 45; 47. This factor favors approval.

(K) <u>The Nature and Length of the Professional Relationship Between the Attorney and Client.</u> Representing employees in wage and hour matters differs form the work of defense firms, which have a steady book of corporate clientele. Typically, defense firms' clients require continuous legal services from their counsel. Comparatively, it is unlikely that many Collective Members will be seeking additional representation from Plaintiff's Counsel after the conclusion of a lawsuit. The wage claims asserted in this Lawsuit do not lend themselves to continuous, long-term attorney-client relationships. This factor thus weighs in favor of the requested fee award.

(L) <u>Awards in similar actions</u>: As discussed, it is appropriate to award reasonable attorneys' fees and costs under the fee shifting provision of the FLSA. *See e.g.*, *Newhouse*, 708 F.2d at 441 ("The FLSA grants prevailing plaintiffs a reasonable attorney's fee.") (citing 29 U.S.C. § 216(b)); *Bonnette*, 704 F.2d at 1473 (upholding a $100,000 attorneys' fees award for an FLSA wage recovery of $18,455). As discussed herein, Plaintiff's Counsel's requested fees and costs are reasonable and should be approved. Moreover, pursuant to the Settlement Agreement, Defendant does not oppose the request for approval of fees and costs in the amount of $55,000.

(M) <u>Other matters deemed appropriate under the circumstances</u>: Plaintiff's Counsel incurred other costs and expenses in the amount of $5,204.21. All of the expenses incurred were reasonable and necessary to the prosecution of this case and should be approved. Schalman-Bergen Decl. ¶¶ 45-47.

WHEREFORE, for these reasons, the Parties request this Court's Order approving the parties' Settlement Agreement as fair and reasonable, including its provision for the named Plaintiff to receive $2,500 for a service award, and approving an award of attorneys' fees and costs in the amount of $55,000.00.

RESPECTFULLY SUBMITTED this 24th day of September, 2018.

| | |
|---|---|
| By: s/Daniel Bonnett<br>Susan Martin (AZ #014226)<br>Daniel Bonnett (AZ #014127)<br>Jennifer Kroll (AZ #019859)<br>MARTIN & BONNETT, P.L.L.C.<br>4647 N. 32nd Street, Suite 185<br>Phoenix, Arizona 85018<br>Telephone: (602) 240-6900<br>smartin@martinbonnett.com<br>dbonnett@martinbonnett.com<br>jkroll@martinbonnett.com<br><br>Shanon J. Carson *(pro hac vice)*<br>Sarah R. Schalman-Bergen *(pro hac vice)*<br>Alexandra K. Piazza *(pro hac vice)*<br>BERGER MONTAGUE PC<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-4604<br>Email: scarson@bm.net<br>sschalman-bergen@bm.net<br>apiazza@bm.net<br><br>Harold Lichten *(pro hac vice)*<br>Olena Savytska (pro hac vice)<br>LICHTEN & LISS-RIORDAN, P.C.<br>729 Boylston St., Suite 2000<br>Boston, MA 02116<br>Telephone: (617) 994-5800<br>Facsimile: (617) 994-5801<br>hlichten@llrlaw.com<br>osavytska@llrlaw.com<br><br>*Attorneys for Plaintiff* | By: s/Kimberly J. Kisner (w/permission)<br><br>James O. Bell (AZ #023584)<br>Yvonne R. Love (AZ #033826)<br>Spiess & Bell, PC<br>4500 N. 32nd St., Suite 201B<br>Phoenix, AZ 85018<br>jim@spiessbell.com<br><br>Kimberly J. Kisner (pro hac vice)<br>Leah K. Sell (pro hac vice)<br>Leech Tishman Fuscaldo & Lampl, LLC<br>525 William Penn Place, 28th Floor<br>Pittsburgh, PA 15219<br><br>*Attorneys for Defendant* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM-ECF System for filing and transmittal of a Notice of Electronic filing to the following CM-ECF registrants:

James O. Bell, Esq.
Yvonne R. Love, Esq.
Spiess & Bell, PC
4500 N. 32nd St., Suite 201B
Phoenix, AZ 85018

Kimberly J. Kisner, Esq.
Leah K. Sell, Esq.
Leech Tishman Fuscaldo & Lampl, LLC
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219

s/Kathy Pasley